**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRYAN BECKER,** | : | **CIVIL ACTION** |
| **Petitioner** | : | |
| | : | |
| **v.** | : | **No. 08-5274** |
| | : | |
| **FRANKLIN J. TENNIS, et al.,** | : | |
| **Respondents** | : | |

## REPORT AND RECOMMENDATION

**TIMOTHY R. RICE**
**U.S. MAGISTRATE JUDGE**                                                    **April 23, 2010**

Petitioner Bryan Becker, a prisoner at the State Correctional Institution Rockview in

Bellefonte, Pennsylvania, has filed a pro se petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  For the following reasons, I respectfully recommend Becker's petition be

DENIED as procedurally defaulted and meritless.

## FACTUAL AND PROCEDURAL HISTORY

On July 29, 2003 a jury convicted Becker of attempt to commit involuntary deviate

sexual intercourse;[1] criminal use of a communication facility;[2] attempt to commit corruption of

minors;[3] and solicitation to commit involuntary deviate sexual intercourse.[4]  See Memorandum at

---

[1] 18 Pa. Cons. Stat. §§ 901, 3123(a)(7)

[2] 18 Pa. Cons. Stat. § 7512

[3] 18 Pa. Cons. Stat. §§ 901, 6301

[4] 18 Pa. Cons. Stat. §§ 902, 3123(a)(7)

2-3, <u>Commonwealth v. Becker</u>, 3392 EDA 2007 (Pa. Super. Ct. Sept. 25, 2008) [hereinafter PCRA Super. Ct. Opinion]. These charges stemmed from Becker's internet communications with law enforcement officials posing as a thirteen-year-old boy, and Becker's arrival at an agreed upon rendevous. <u>Id</u>. at 1-2. On October 27, 2004, Becker was sentenced to nine-to-thirteen years imprisonment. <u>Id</u>. at 3. Becker appealed to the Superior Court challenging the sufficiency of evidence. <u>See</u> Brief for Appellant, Bryan Lee Becker, <u>Commonwealth v. Becker</u>, No. 3154 EDA 2004 (Pa. Super. Ct. May 6, 2005). On November 16, 2005, the Superior Court affirmed the judgment of sentence. <u>See</u> Memorandum, <u>Commonwealth v. Becker</u>, 3154 EDA 2004 (Pa. Super. Ct. Nov. 16, 2005) [hereinafter Direct Appeal Opinion]. Becker did not petition the United States Supreme Court for certiorari.

On January 18, 2006 Becker filed a timely pro se petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat, § 9341 et seq,. Becker alleged counsel ineffectiveness for: (1) failing to conduct an adequate cross-examination of Commonwealth witnesses; (2) failing to draw attention to inconsistencies in statements of Commonwealth witnesses; (3) failing to prevent the prosecutor from presenting testimony the prosecutor knew was false; (4) failing to conduct an adequate pre-trial investigation; (5) failing to fully develop an entrapment defense; (6) failing to develop a "free speech" defense; (7) failing to advance a "mistake of age" defense; (8) failing to conduct an adequate voir dire of potential jurors; (9) failing to object when the prosecutor impermissibly vouched for the credibility of Commonwealth witnesses and made an improper analogy during the closing argument; and (10) appellate counsel's failure to raise all of the above issues on direct appeal. <u>See</u> Motion for Post Conviction Collateral Relief at 11-13, <u>Commonwealth v. Becker</u>, T.R. No. 3879-02 (Pa. Ct.

Com. Pl. Del. Jan. 18, 2006) [hereinafter PCRA Petition]. Counsel was appointed to assist Becker with his PCRA petition. On June 19, 2007, however, appointed counsel filed a Turner/Finley letter to withdraw on the basis that Becker's claims lacked merit. See Application to Withdrawal at 5, Commonwealth v. Becker, T.R. No. 3870-029 (Pa. Ct. Com. Pl. Del. June 19, 2007). The PCRA court granted appointed counsel's request to withdraw and dismissed Becker's PCRA petition. See Opinion at 2-3, Commonwealth v. Becker, No. 3879-02, (Ct. Com. Pl. Del. Nov. 29, 2007) [hereinafter PCRA Opinion].

Becker filed a timely appeal to the Superior Court alleging: (1) trial court error for allowing prior bad act testimony to be offered by Commonwealth witnesses; (2) trial court error for allowing amendment of the criminal information, adding the charge of criminal attempt to commit involuntary deviate sexual intercourse; (3) trial court error for failure to merge the charges of criminal attempt to commit involuntary deviate sexual intercourse, criminal solicitation of involuntary deviate sexual intercourse, and attempt to commit corruption of minors; (4) prosecutorial misconduct through misleading statements made during the opening statement; (5) trial counsel's failure to appeal the trial court's allowance of testimony concerning prior bad acts; (6) trial counsel's failure to request a limiting instruction in regard to prior bad act testimony; (7) trial counsel's failure to object to misleading statements in the prosecutor's opening statement; (8) trial counsel's failure to object to the trial court's amendment of the criminal information; (9) appellate counsel's failure to raise the issue of amendment of the criminal information on direct appeal; (10) prosecutorial misconduct through a failure to correct testimony from Becker's probation officer, which the prosecutor knew to be false; (11) trial counsel's failure to object to the purportedly false testimony offered by Becker's probation

officer; (12) prosecutorial misconduct during closing argument through impermissible vouching for the credibility of Commonwealth witnesses; (13) prosecutorial misconduct during closing argument through use of an impermissible analogy; (14) trial counsel's failure to conduct an adequate pre-trial investigation by obtaining phone company records of calls made during the investigation leading to Becker's arrest; (15) trial counsel's failure to fully develop an entrapment defense; and (16) appellate counsel's failure to raise all of the above issues on direct appeal. See Petitioner's Brief on PCRA Post-Conviction Collateral Appeal at 7-63, Commonwealth v. Becker, No. 3392 EDA 2007 (Pa. Super. Ct. Dec. 12, 2007) [hereinafter Super. Ct. Brief]. The Superior Court held the first nine claims were waived and not cognizable on appeal because Becker did not raise these issues for review by the PCRA court. See PCRA Super. Ct. Opinion at 3-4 & n.8. The court held the remaining seven claims were meritless and affirmed the PCRA court's dismissal. Id. at 5-16.

On October 30, 2008, Becker filed a timely federal habeas corpus petition; however, he used the incorrect form. See Petition for Relief from a Conviction or Sentence by a Person in State Custody, Becker v. Tennis, No. 08-CV-5274 (E.D. Pa. Oct. 30, 2008) [hereinafter Habeas Petition]. Pursuant to an order from the Honorable James Knoll Gardner, United States District Court Judge, Becker filed an amended habeas petition on January 20, 2009 alleging substantially the same claims: (1) the prosecutor made misleading statements during the opening statement; (2) the prosecutor presented testimony he knew or should have known was false; (3) the prosecutor impermissibly vouched for the credibility of Commonwealth witnesses and made an improper analogy during the closing argument; (4) trial court error for failing to provide a limiting instruction in regard to prior bad act testimony; (5) trial court error for failing to prevent

the presentation of false testimony; (6) counsel ineffectiveness for failing to object to misleading statements made during the prosecutor's opening statement; (7) counsel ineffectiveness for failing to request a limiting instruction regarding prior bad act testimony; (8) counsel ineffectiveness for failing to conduct an adequate pretrial investigation; (9) counsel ineffectiveness for failing to effectively cross-examine Becker's probation officer or object when the probation officer gave false testimony; (10) counsel ineffectiveness for failing to object during the prosecutor's closing argument when the prosecutor impermissibly vouched for the credibility of Commonwealth witnesses and made an improper analogy; (11) counsel ineffectiveness for failing to develop an entrapment defense; and insufficient evidence to support his convictions for (12) criminal attempt to commit involuntary sexual intercourse; (13) criminal attempt to corrupt a minor; (14) criminal use of a communication facility.[5] See Form for Use in Applications for Habeas Corpus under 28 U.S.C. § 2254 at 9, Becker v. Tennis, No. 08-CV-5274 (E.D. Pa. Jan. 20 2009) [hereinafter Amended Habeas Petition].

After thorough review of the record, I recommend claims one, four, five, six, and seven be denied as procedurally defaulted and claims two, three, eight, nine, ten, eleven, twelve, thirteen, and fourteen be denied as meritless.

**DISCUSSION**

I.     Procedurally Defaulted Claims

A federal court may not grant habeas relief to a state prisoner unless the prisoner

---

[5] The amended petition arguably fails to raise some of the claims raised in Becker's original petition. See Amended Habeas Petition at 9. Nonetheless, because Becker is proceeding pro se, I will treat the amended petition as including all claims raised in the original petition. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (pro se petitioner's pleadings should be liberally construed).

exhausted his available remedies in state court. 28 U.S.C. § 2254(b); Cone v. Bell, 129 S. Ct. 1769, 1780 (2009); O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999); Nara v. Frank, 488 F.3d 187, 197 (3d Cir. 2007). A state prisoner must complete "the State's established appellate review process" to "give the state courts one full opportunity to resolve any constitutional issues."[6] O'Sullivan, 526 U.S. at 845; Nara, 488 F.3d at 197; see Cone, 129 S. Ct. at 1780-81; see also Woodford v. Ngo, 548 U.S. 81, 92 (2006). A petitioner "shall not be deemed to have exhausted the remedies available . . . if he has the right under the law of the [s]tate to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

A claim "fairly presented" to the state courts is exhausted. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan, 526 U.S. at 848; Nara, 488 F.3d at 197; Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002). The relevant inquiry is whether the petitioner presented in state courts the legal theory and supporting facts asserted in the federal habeas petition. Nara, 488 F.3d at 197-98; Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001); see Revels v. DiGuglielmo, 2005 WL 1677951, *4 (E.D. Pa. July 18, 2005) (DuBois, J.).

"[I]f [a] petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is procedural default for purposes of federal habeas . . . ." Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). Although the issue is best addressed by the state courts, a federal court may dismiss a petition as procedurally barred if state law would unambiguously deem it

---

[6] Pennsylvania Supreme Court Order No. 218 declares federal habeas petitioners no longer have to appeal to the state supreme court to satisfy the exhaustion requirement. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

defaulted.  See Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995).  Similarly, procedural default

occurs when a petitioner presented the claim in the state system, but the state court refuses to

address the claim on the merits because of "a state-law ground that 'is independent of the federal

question and adequate to support the judgment.'"  Cone, 129 S. Ct. at 1780 (quoting Coleman,

501 U.S. at 729).  The purpose of the procedural default rule is to prevent habeas petitioners from

avoiding the exhaustion doctrine by defaulting their claims in state court.  Coleman, 501 U.S. at

732.

An issue is waived if a petitioner fails to raise it and the issue could have been raised

before trial, at trial, on appeal, in a habeas corpus proceeding, or in a prior proceeding.  42 Pa.

Cons. Stat. § 9544(b); see also Sistrunk v. Vaughn, 96 F.3d 666, 671 n.4 (3d Cir. 1996) ("the

[Pennsylvania Rules of Appellate Procedure] dictate that an issue raised at the trial level but not

preserved on appeal will not be considered by any subsequent appellate court"); Purple Orchid,

Inc. v. Pa. State Police, 813 A.2d 801, 804 (Pa. 2002) (citing Shoemaker v. Lehigh Twp., 676

A.2d 216, 220 n.3 (Pa. 1996)) (issues not raised in petition for allowance of appeal are waived);

 Commonwealth v. D'Collanfield, 805 A.2d 1244, 1246 (Pa. Super. Ct. 2002) (issue not

preserved on appeal waived).  Moreover, collateral actions must be filed within one year of the

date on which the conviction became final.  42 Pa. Cons. Stat. § 9545(b)(1).

Such state law waiver and PCRA statute of limitation rules are independent and adequate

state law grounds that bar federal habeas review.  Peterson v. Brennan, 196 Fed. Appx. 135, 142

(3d Cir. 2006); Griggs v. DiGuglielmo, 2007 WL 2007971, at *5 (E.D. Pa. July 3, 2007) (Yohn,

J.); Frey v. Stowitzky, 2007 WL 1574768 (E.D. Pa. May 31, 2007) (Giles, J.) (claims

procedurally defaulted in federal court because petitioner's direct appeal was dismissed for

failure to file a brief and his PCRA petition was untimely).  These are rules of general

applicability which are "firmly established, readily ascertainable, and regularly followed."  See

Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (quoting Szuchon v. Lehman, 273 F.3d 299,

327 (3d Cir. 2001)); see also Cone, 129 S. Ct. at 1780.

      A.      Claim Not Properly Presented to the State Courts

Becker waived his claim of trial court error for permitting the presentation of false

testimony in state court when he failed to raise it on direct review or during PCRA review.  See

42 Pa. Cons. Stat. § 9544(b); see also Sistrunk, 96 F.3d at 671 n.4.  Becker's conviction became

final on December 16, 2005, thirty days after the Superior Court affirmed his conviction.  See

Schwartz v. Meyers, 204 F.3d 417, 420, 424 (3d Cir. 2000).  Becker is now beyond the one-year

limitations period for filing an additional PCRA petition.  See 42 Pa. Cons. Stat. § 9545(b)(1)

(petition, including second or subsequent, must be filed within one year of the time conviction

becomes final).  Becker's claim is procedurally defaulted because he failed to raise the claim in

state court and independent and adequate state law grounds now preclude state court review.  See

Coleman, 501 U.S. at 729.

Becker may obtain federal habeas review of claims defaulted pursuant to independent and

adequate state procedural rules only if he can "demonstrate cause for the default and actual

prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider

the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750; Smith

v. Murray, 477 U.S. 527, 533 (1986); see also Leyva, 504 F.3d at 362 n.6, 366.  This requirement

is grounded in the need for finality and comity, to ensure state courts have an adequate

opportunity to review a case on the merits.  Smith, 477 U.S. at 533.

To constitute cause to excuse default, Becker must show "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Coleman, 501 U.S. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)); Sistrunk, 96 F.3d at 675. To establish prejudice, Becker must show "actual prejudice resulting from the errors of which he complains." McClesky v. Zant, 499 U.S. 467, 494 (1991) (quoting United States v. Frady, 456 U.S. 152, 168 (1982)). Actual prejudice exists if the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170.

To establish the requisite fundamental miscarriage of justice, Becker must demonstrate "actual innocence," see Schlup v. Delo, 513 U.S. 298, 324 (1995); Leyva, 504 F.3d at 366, by presenting "new reliable evidence," such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" not presented at trial, Schlup, 513 U.S. at 324; Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004) (addressing claim of actual innocence but rejecting it on the merits), that would make it more likely than not that "no reasonable juror would find [petitioner] guilty beyond a reasonable doubt," House v. Bell, 547 U.S. 518, 538 (2006); Schlup, 513 U.S. at 316 (even a "concededly meritorious constitutional violation" is not sufficient to establish a miscarriage of justice to excuse procedural default absent new evidence of innocence). Becker must show no reasonable juror would have found him guilty, and not merely that a reasonable doubt exists in light of the new evidence. Schlup, 513 U.S. at 329.

Becker does not establish, and I cannot find, cause or prejudice to excuse the default of his claim. Further, Becker does not allege, nor can I find, any new evidence to support his actual innocence. See Schlup, 513 U.S. at 329. Accordingly, claim five of Becker's habeas petition

is procedurally defaulted.

B.    Claims Not Preserved On Appeal

Becker raised the following claims to the Superior Court only when appealing the PCRA trial court's decision: (1) prosecutor misconduct for statements made during the opening statement;  (2) trial court error for failure to provide a limiting instruction regarding prior bad act testimony; (3) counsel ineffectiveness for failure to object to misleading statements made during the prosecutor's opening statement; and (4) counsel ineffectiveness for failure to request a limiting instruction regarding prior bad act testimony.  See Petitioner's Brief on PCRA Post-Conviction Collateral Appeal at 48-51, 42-44, 24-26, Commonwealth v. Becker, No. 3392 EDA 2007 (Pa. Super. Ct. Dec. 12, 2007) [hereinafter Super. Ct.  Brief].[7]  Becker, however, never presented these claims on PCRA or direct appeal.  The Superior Court concluded these claims were waived and not cognizable on appeal because Becker failed to raise them in his PCRA petition or his response to the PCRA court's intent to dismiss. See PCRA Super. Ct. Opinion at 4 (citing Pa. R. App. P. 302; Commonwealth v. Washington, 927 A.2d 586, 601 (Pa. 2007)).

Becker's claims are procedurally defaulted because he failed to present them on direct appeal or to the PCRA court.  See 42 Pa. Cons. Stat. § 9544(b); see also Sistrunk v. Vaughn, 96 F.3d at 671 n.4.  As discussed above, independent and adequate state law grounds now preclude state court review, see Coleman, 501 U.S. at 729, and Becker does not establish, and I cannot find, cause or prejudice to excuse the default of his claims or any new evidence to support his actual innocence. See Schlup, 513 U.S. at 329, see also, supra, I.A.  Therefore, claims one, four, six, and seven of Becker's habeas petition are procedurally defaulted.

---

[7]  Becker asserts these claims in his habeas petition at claims one, four, six, and seven.

II.    Meritless Claims

State court decisions merit substantial deference.  See 28 U.S.C. § 2254(d)(1).  A writ of

habeas corpus cannot be granted unless I find the state court's adjudication of the merits of

Becker's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States[,] or (2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."  § 2254(d).  I must

presume the state court's findings of fact are correct and Becker must rebut that presumption of

correctness by clear and convincing evidence.  See § 2254(e)(1); Miller-El v. Cockrell, 537 U.S.

322, 340-41 (2003); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003) (Kelly, S.J.).

To constitute an "adjudication on the merits," the state court decision must have "preclusive

effect," i.e., it must finally resolve the claim on its merits, not on a procedural or other ground.

Thomas v. Horn, 570 F.3d 105, 115 (3d Cir. 2009) (citing Rompilla v. Horn, 355 F.3d 233, 247

(3d Cir. 2004)).[8]

A state court ruling is "contrary to" clearly established Supreme Court precedent for the

purposes of § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result

_____

[8] If a PCRA court decides a claim on the merits, but the Superior Court dismisses the
claim on procedural grounds, the PCRA court decision does not constitute an adjudication on the
merits.  See Thomas, 570 F.3d at 114-15.  The Superior Court's dismissal of the claim on
procedural grounds "strip[s] the PCRA court's substantive determination of [the] claims of
preclusive effect."  Id. at 115.  Where a claim has not been adjudicated on the merits in state
court proceedings, "the federal habeas court must conduct a de novo review."  Id. at 113.

different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Jamison v. Klem, 544 F.3d 266, 274-75 (3d Cir. 2008). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court.[9] Williams, 529 U.S. at 404-05; see Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009). The state court is not required to cite, or even have an awareness of, governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); Jamison, 544 F.3d at 274-75.

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule from Supreme Court cases, but "unreasonably applies it to the facts of the particular prisoner's case." Williams, 529 U.S. at 407-08; Jamison, 544 F.3d at 275 (quoting Matteo, 171 F.3d at 887). When making the "unreasonable application" inquiry, I must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409; see also Matteo, 171 F.3d at 891 ("whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under [Supreme Court precedent]"). A court that unreasonably extends an established rule to a new context where it should not apply, or unreasonably fails to extend such a rule to a new context where it should apply, may be deemed to have unreasonably applied the correct rule. Williams, 529 U.S. at 407; Jamison, 544 F.3d at 275 (quoting Matteo, 171 F.3d at 887). "[I]t is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal

---

[9] District court and appellate court decisions applying Supreme Court precedent, however, may amplify Supreme Court precedent. Hardcastle v. Horn, 368 F.3d 246, 256 n.3 (3d Cir. 2004) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999)).

rule that has not been squarely established by [the Supreme Court]." Knowles, 129 S. Ct. at 1413. A showing of clear error is not sufficient. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); see also Douglas v. Cathal, 456 F.3d 403, 417 (3d Cir. 2006) (grant of writ inappropriate where state determination was not objectively unreasonable, even where reasonable jurists may disagree about the correct disposition of the underlying claim). I also may not grant habeas relief "merely . . . because the state court applied federal law erroneously or incorrectly." Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005)). Rather, I must determine whether the state court's "determination was unreasonable – a substantially higher threshold." Knowles, 129 S. Ct. at 1420 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).

A.     Prosecutorial Misconduct Claims

1.     Becker's Claim of Prosecutorial Misconduct Due to the Presentation of False Testimony is Meritless

Becker claims the prosecutor elicited testimony which the prosecutor either knew or should have known to be false. See Habeas Petition at 6; Super. Ct. Brief at 27-31. A "state may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." See Napue v. People of State of Illinois, 360 U.S. 264, 269 (1959). It is "fundamentally unfair to the accused where 'the prosecution knew, or should have known, of the perjury.'" See Lambert v. Blackwell, 387 F.3d 210, 242 (3d Cir. 2004) (quoting United States v. Agur, 427 U.S. 97, 103 (1976)). "[T]he conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Id. (quoting United States v. Biberfeld, 957 F.2d 98, 102 (3d Cir. 1992)).

To establish prosecutor misconduct, Becker must prove "(1) [the witness] committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is any reasonable likelihood that the false testimony could have affected the verdict." Lambert, 387 F.3d at 242; accord Creel v. Johnson, 162 F.3d 385, 391 (5th Cir. 1998) (citing Kirkpatrick v. Whitley, 992 F.2d 491, 197 (5th Cir. 1993)) (defendant must establish "(1) the testimony was false; (2) the state knew it was false; and (3) the testimony was material.").

At trial, Becker's probation officer, James Ellis, testified he was prompted to contact police after Becker admitted he had used his computer to download images of teenage boys and Becker gave him a business card containing two e-mail screen names and a home address. See PCRA Super. Ct. Opinion at 7. Becker claims the prosecutor knew or should have known the testimony was false, and therefore should have corrected Ellis' testimony. See Habeas Petition at 6; Super. Ct. Brief at 27-31. Becker claims the prosecutor initially told the court in an off-record conversation during a July 25, 2003 pre-trial hearing that Ellis would testify he was told by Becker's stepfather that Becker was downloading illegal pictures of male children, which prompted Ellis to notify police. See Super. Ct. Brief at 27-28.

The PCRA court did not specifically address this argument. See PCRA Opinion at 7. The Superior Court, however, examined the claim and held the record supported the contention Becker admitted to Ellis he had downloaded teenage pornography. See PCRA Super. Ct. Opinion at 8-9. First, the court noted the prosecutor responded to a defense motion to preclude testimony from Ellis, by proffering that:

> Mr. Ellis would testify solely that he knows the Defendant, that he

14

had a meeting with Defendant on a specific date. And that during the meeting the Defendant admitted to him he was downloading teenage pornography, that he also admitted to him that he uses the screen name [omitted]. In fact, he presented a business card with that screen name on it.

See PCRA Super. Ct. Opinion at 8-9. Second, the court referred to Ellis' testimony at trial. Id. at 9. When asked by the prosecutor whether Becker ever gave him a business card, Ellis replied, "Yes . . . and I actually gave [the District Attorney investigators] the card. And [the District Attorney investigators] proceeded from there." Id.

The Superior Court's determination was not contrary to, nor an unreasonable application of, Napue. Williams, 529 U.S. at 404-409. It was not objectively unreasonable for the Superior Court to conclude there was no basis on which to conclude Ellis perjured himself because Ellis testified consistently with the prosecutor's proffer to the court. Consequently, the prosecutor did not elicit testimony he knew or should have known to be false. Thus, this claim lacks merit.

2.      Becker's Claims of Prosecutorial Misconduct During the Closing Argument are Meritless

Prosecutorial misconduct during closing argument constitutes a constitutional violation only when the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); accord Moore v. Morton, 255 F.3d 95, 105 (3d Cir. 2001). To violate due process, prosecutorial misconduct must "constitute[] a 'failure to observe . . . fundamental fairness essential to the very concept of justice.'" Moore, 255 F.3d at 105 (quoting Donnelly, 416 U.S. at 643). There is no violation of due process when the prosecutor's statements were based on evidence. See Darden v. Wainwright, 477 U.S. 168, 181-82 (1986); see also Berger v. United States, 295 U.S. 78, 88-89

15

(1935).

The prosecutor's comments must be viewed in the context of the entire trial.  Walker v. Palakovich, 280 Fed. Appx. 212, 216 (3d Cir. 2008).  Prosecutors are given great latitude, especially during closing arguments, to ask the jury to draw inferences based on the evidence presented at trial.  Id.; United States v. Werme, 939 F.2d 108, 117 (3d Cir. 1990); United States v. Waldemer, 50 F.3d 1379, 1384-85 (11th Cir. 1995).  The appropriate inquiry when reviewing such an inference is whether such remarks in the context of the entire trial were sufficiently prejudicial as to violate defendant's due process rights.  Walker, 280 Fed. Appx. at 216.  Even a prosecutor's statement that warrants criticism does not rise to the high threshold required for unconstitutional misconduct, unless there is a strong likelihood the jury's decision was influenced by the improper argument.  Id. at 182.

### a.  Impermissible Vouching

Becker claims the prosecutor committed prosecutorial misconduct by impermissibly vouching for the credibility of Commonwealth witnesses.  See Habeas Petition at 6; Super. Ct. Brief at 32.  During his closing argument, the prosecutor stated to the jury,

> If Agent Deery all along was posing as a 13-year-old boy, do you really think she is going to be foolish enough as a trained agent . . . to get on the phone as a 13-year-old boy and call the defendant and say, hey I am here waiting for you, come get me . . . there is no way a 30-year old trained Attorney General's Office agent is going to make a mistake like that.

See Superior Court Brief at 32.

The PCRA court found Becker's claim meritless, noting that the prosecution is accorded reasonable leeway in closing argument and concluding there was nothing remotely objectionable

in the prosecutor's closing argument.  See PCRA Opinion at 13 (citing Commonwealth v. Cox, 581 Pa. 107, 127 (Pa. 2004)).  The Superior Court affirmed, concluding the prosecutor did not subjectively vouch for Agent Deery's credibility.  Id. at 10.  The Superior Court explained improper bolstering or vouching for a government witness occurs only when the prosecutor assures the jury the witness is credible and such assurance is based on either the prosecutor's personal knowledge or other information not contained in the record.  See PCRA Super. Ct. Opinion at 9-10 (citing Commonwealth v. Cousar, 928 A.2d 1025, 1042 (Pa. 2007)).  The court found the prosecutor supported his statement with information about Agent Deery's specific training.  Id.

The state courts' determination was not contrary to, nor an objectively unreasonable application of, Supreme Court precedent.  See § 2254(d)(1); Williams, 529 U.S. at 404-09.  It was not objectively unreasonable to conclude the prosecutor merely urged the jury to find Agent Deery a credible witness because of her training as a law enforcement officer.  See Tr. of Proceedings, 157-59, July 29, 2003.  The prosecutor's remarks did not constitute prosecutorial misconduct because the prosecutor simply asked the jury to draw a permissible inference based on evidence.  See Walker, 280 Fed. Appx. at 216; see also Werme, 939 F.2d 108; Waldemer, 50 F. 3d at 1384-85.  Accordingly, this claim lacks merit.

        b.      Use of an Impermissible Analogy

Becker also alleges the prosecutor engaged in misconduct during his closing argument when he said:

> Rather than having a public chat with this person in conversation as part of a group, [Becker] instant messages him, taking it to a private instant message screen.  Ladies and Gentleman, that is no

17

> different than if you were to walk into a crowded room at the mall,
> and saw a 13-year old boy, figured he wanted to have a
> conversation with him, and he would take that boy by the hand,
> and say, come on, let us got through that door and let us go
> someplace where you and I can talk and noone else will know
> what we are saying.

See Habeas Petition at 6; Super. Ct. Brief at 32-33; see also PCRA Super. Ct. Opinion at 11. The

PCRA court held the prosecutor's closing argument was not objectionable because nothing stated

would have the unavoidable effect of prejudicing the jury against the defendant. See PCRA

Opinion at 13; supra II.A.2.a. The Superior Court held the claim meritless because Becker failed

to argue why the prosecutor could not draw such an analogy in a case where the defendant is

accused of attempting to make inappropriate sexual contact with a minor. See PCRA Super. Ct.

Opinion at 11.

The state courts' determination was not contrary to, nor an objectively unreasonable

application of, Supreme Court precedent. See § 2254(d)(1); Williams, 529 U.S. at 404-09.

Prosecutors are permitted leeway in asking the jury to draw inferences based on the evidence

presented at trial. Walker, 280 Fed. Appx. at 216; Werme, 939 F.2d at 117; Waldemer, 50 F.3d

at 1384-85. It was objectively reasonable for the court to conclude the prosecutor's analogy was

a reasonable inference from evidence. This claim lacks merit.

B.    Counsel Ineffectiveness Claims

Clearly established federal law governing ineffectiveness claims is set forth in the two-

part test of Strickland v. Washington, 466 U.S. 668 (1984); see Bell v. Cone 535 U.S. 685, 698

(2002); Padilla v. Kentucky, No. 08-651, slip op. at 9 (S. Ct. Mar. 31, 2010). "First, the

defendant must show counsel's performance was deficient," which requires showing "counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. "Second, the defendant must show the deficient performance prejudiced the defense," which requires showing counsel's "errors were so serious as to deprive the defendant of a fair trial." Id.; see generally Porter v. McCollum, 130 S. Ct. 447, 453-53 (2009) (prejudice found based on counsel's failure to present mitigating evidence during penalty phase of capital murder case); Smith v. Spisak, 130 S. Ct. 676, 688 (2010) (no prejudice found where there was no reasonable probability "a more adequate" closing argument would have changed the result of trial). "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687. Pennsylvania applies the same test for ineffective assistance of counsel as the Strickland test used in federal courts.[10] Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000); Sneed, 899 A.2d at 1075-76.

Counsel's effectiveness is measured objectively considering all the circumstances. See Strickland, 466 U.S. at 687-88. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Knowles, 129 S. Ct. at 1420 (quoting Strickland, 466 U.S. at 688); accord Padilla, slip. op. at 9. In evaluating counsel's performance, I must be "highly deferential" and "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances. Strickland, 466 U.S. at 689;

---

[10] In Pennsylvania, the ineffective assistance of counsel standard requires the petitioner to "rebut the presumption of professional competence" by demonstrating: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interest; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." Commonwealth v. Sneed, 899 A.2d 1067, 1076 (Pa. 2006). If the petitioner fails to satisfy any of the standard's prongs the claim will be rejected. Id.

accord <u>Knowles</u>, 129 S. Ct. at 1420. "<u>Strickland</u> and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." <u>Rolan v. Vaughn</u>, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 689). A strategic choice "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." <u>Knowles</u>, 129 S. Ct. at 1420 (quoting <u>Strickland</u>, 466 U.S. at 690). The relevant inquiry is not whether Becker's counsel was prudent, appropriate, or perfect. <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987); <u>see</u> <u>Marshall v. Hendricks</u>, 307 F.3d 36, 91 (3d Cir. 2002). Rather, the focus is simply to ensure Becker received a fair trial. <u>See</u> <u>Marshall</u>, 307 F.3d at 91.

To establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Knowles</u>, 129 S. Ct. at 1422 (quoting <u>Strickland</u>, 466 U.S. at 694).

Review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 6 (2003). Therefore, if the state court addressed counsel's effectiveness, Becker must show the state court's decision was objectively unreasonable. <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." <u>Bell</u>, 535 U.S. at 698-99.

     1.    <u>Becker's Trial Counsel Ineffectiveness Claim for Failure to Conduct an Adequate Pretrial Investigation is Meritless</u>

Becker alleges trial counsel ineffectiveness for failure to investigate and retrieve either his

cell phone from police or records from his mobile phone carrier.  <u>See</u> Habeas Petition at 6.

Becker claims evidence showing the number, timing, and origin of phone calls between himself

and law enforcement personnel would support his argument that he lacked the intent to commit

the alleged crimes.  <u>See</u> Super. Ct. Brief at 58-59.   Such evidence, Becker asserts, would

corroborate his testimony that he knew was speaking to an adult woman and only continued

communication to confront her about discriminatory statements he claims she made about

homosexuals.  <u>Id.</u> at 58.  He claims this would establish he lacked the intent to engage in sexual

acts with a minor male when he arrived at the agreed upon meeting spot.  <u>Id.</u>

Moreover, he argues evidence regrading the number of calls made could have been used

to attack the credibility of two law enforcement officers who were involved in the investigation

which led to Becker's arrest by highlighting inconsistencies in their testimony.  <u>Id.</u> at 58-59.

Becker argues that although one law enforcement officer, Lieutenant Peifer, testified he made no

calls to Becker, Agent Deery testified to the contrary, stating: "I believe the only call that I made

was in the breezeway. . . Any other phone calls that were done, were done by Lieutenant Peifer,

because I had gone back to the office."  <u>Id.</u>

Trial counsel has a duty to investigate the circumstances of the case and all avenues

relevant to the case's merits.  <u>See</u> <u>Strickland</u>, 466 U.S. at 691; <u>see also</u> <u>Porter</u>, 130 S. Ct. at 452-

53 (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 524 (2003)).  Failure to conduct any pretrial

investigation generally constitutes ineffective assistance of counsel.  <u>United States v. Kauffman</u>,

109 F.3d 186, 190 (3d Cir. 1991) (citations omitted).  In assessing the reasonableness of an

attorney's investigation, the court must consider the evidence already known to counsel and

whether the known evidence would lead a reasonable attorney to investigate further.  <u>See</u>

Strickland, 466 U.S. at 691. Additionally, Becker must show prejudice by demonstrating a proper investigation would have produced information that would have resulted in a different trial outcome. See id.; Padilla, slip op. at 9.

The state courts found these ineffectiveness claims meritless. The PCRA court noted Becker's trial counsel attempted to secure Becker's cell phone records from Becker's carrier through a subpoena. See PCRA Opinion at 10. These efforts, however, proved fruitless because of the carrier's practice of destroying records after two years. Id. In addition, the PCRA court concluded, although these records could corroborate evidence law enforcement personnel kept the lines of communication open, the records would not substantiate whether calls were made by a woman. Id. Therefore, the records could not support Becker's contention that he knew he was meeting an adult and did not have the intent to engage in sexual acts with a minor male. Id.

The Superior Court affirmed, holding cell phone records would not corroborate Becker's testimony he knew he was speaking to an adult. See PCRA Super. Ct. Opinion at 13. The Superior Court noted, however, the cell phone records which indicate the length of each call, could substantiate Becker's testimony that after he received phone calls every twenty to thirty minutes, he decided to go to the meeting place in order to confront what he believed to be a "gay basher." Id. at 13. Nonetheless, the court held Becker was unable to show prejudice from the absence of the cell phone records in light of the other evidence against him. Id. The Superior Court noted that after he failed to find either the perceived adult "gay basher" nor a male minor at an agreed upon meeting place, Becker wrote another email. Id. at 13-14. The subject of the email read: "dude I [sic] finally found the place I [sic] think at 7:00[pm] and couldn't find you" and the body of the email stated, "please let me make it up to you now that I [sic] know where

I'm [sic] going please please please. call me later [phone number omitted]." Id. The Superior Court concluded this email shows Becker's intent to meet with a minor in order to engage in sexual behavior had not changed and that his testimony regarding a perceived "gay basher" was not credible. Id.

Moreover, the court held there was no basis to grant relief to Becker as a result of discrepancies in the testimony provided by Lieutenant Peifer and Agent Deery. Id. The Superior Court noted Agent Deery was not present while Lieutenant Peifer remained at the scene. Id. Thus, the court concluded Agent Deery's testimony that Lieutenant Peifer placed calls to Becker was merely speculative. Id. Moreover, Lieutenant Peifer specifically testified he did not call Becker. Id.

The state courts' decision was not contrary to, nor an unreasonable application of, Strickland. See § 2254(d)(1); Williams, 529 U.S. at 404-09. It was not objectively unreasonable to reject Becker's ineffectiveness claim because any evidence gained from Becker's cell phone or cell phone records could not have corroborated his argument that he knew he was talking to an adult woman and therefore lacked the intent to engage in sexual behavior with a minor male. Nor would the records have assisted in impeaching Agent Deery and Lieutenant Peifer. See Strickland, 466 U.S. at 680; see also Williams, 529 U.S. at 407; Rolan, 445 F.3d at 681-82 (habeas court will not second guess trial counsel's strategic choices). Moreover, Becker failed to establish the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. Accordingly, this claim lacks merit.

2.      Becker's Trial Counsel Ineffectiveness Claim for Failure to Conduct an
        Effective Cross-Examination or Object to False Testimony From Becker's
        Parole Officer is Meritless.

Becker alleges  trial counsel ineffectiveness for failure to properly impeach Becker's

probation officer.  See Habeas Petition at 7; Super. Ct. Brief at 46-48.  At trial, Ellis testified he

contacted law enforcement officials after Becker admitted he previously used his computer to

download images of teenage boys and handed him a business card with two e-mail screen names

and a home address.  See PCRA Super. Ct. Opinion at 7.  Becker argues trial counsel was aware

that Ellis previously made inconsistent statements attributing Becker's stepfather as the source of

information that triggered the investigation.  See Habeas Petition at 7; see also Super. Ct. Brief at

46.

The state courts found this claim meritless.  The PCRA court noted Becker's trial counsel

attempted to secure a pre-trial ruling precluding all testimony from Ellis but that the motion was

denied.  See PCRA Opinion at 7.   The trial court did, however, recognize the potential for

prejudice if the jury were told Ellis was Becker's probation officer.  Id.  Therefore, the trial judge

ordered that the connection between Becker and Ellis would not be revealed unless Becker

"opened the door."  Id.  The PCRA court held Becker's counsel had significant reason to

carefully limit his cross-examination, because a full-scale assault on Ellis' testimony risked

"opening the door" to a revelation Becker was serving a criminal sentence.  Id.  In addition, the

PCRA court noted a review of the trial transcript revealed Becker's counsel conducted an

effective attack on suspect areas of Ellis' testimony.  Id.

The Superior Court affirmed, stating attempts to impeach Ellis' credibility carried a risk

of opening the door to revealing Ellis was Becker's probation officer.  See PCRA Super. Ct.

Opinion at 7-8 n.10.  The Superior Court also rejected Becker's claim.  See PCRA Super. Ct.

Opinion at 7-8.  It determined that Becker only sought to preclude testimony from Ellis regarding

information revealed to him by Becker's stepfather as hearsay.[11]  Id. at 8.  Moreover, the Superior

Court held the record supported the Commonwealth's contention that Becker was responsible for

admitting he downloaded teenage male pornography.  Id. at 8-9.  Specifically, the prosecutor told

the court he expected Ellis would testify that Becker admitted to downloading teenage

pornography and that Becker gave him a business card indicating the screen name he used.  Id.

When Ellis took the stand and was asked whether Becker gave him a business card, he

responded: "Yes . . . and I actually gave [the District Attorney investigators] the card.  And [the

District Attorney investigators] proceeded from there."  Id. at 9.  Thus, the Superior Court held

there was no basis on which to suggest Ellis' testimony was false, and, therefore, no meritorious

ground on which Becker's trial counsel could have objected.  Id. at 9.

---

[11] The defense counsel stated in his motion:

> Your Honor, where I was given to understand that [the
> prosecutor], when we were discussing why certain things
> happened, he contacted [Ellis] and then indicated that he would
> call him as a witness . . . And [Ellis] is alleged to have received
> information, as [the prosecutor] recounted for me, from the
> stepfather of [Becker], to the effect of some activity referencing
> the computer and downloading of pornography.  Or Henderson,
> who is the actual probation officer received that information.
> Henderson then contacted his boss, his supervisor, Mr. Ellis.  And
> Ellis, apparently, according to what I understand the proposed
> testimony was, as mentioned to me on Friday, had a meeting with
> [Becker], Ellis and Henderson.  And at that time the allegation
> was made that [Becker] was using the computer to download
> images, pornographic images.

See PCRA Super. Ct. Opinion at 8.

The state courts' determination was not contrary to, nor an unreasonable application of, Strickland. It was objectively reasonable to conclude an overly rigorous cross-examination of Ellis risked revealing he was Becker's probation officer, likely prejudicing the jury against Becker. Disclosure of Ellis' position would have allowed the jury to know Becker was a convicted felon. The dangers inherent in such revelation are well-known. See, e.g., Fed. R. Evid. 609. See Strickland, 466 U.S. at 680; see also Williams, 529 U.S. at 407; Rolan, 445 F.3d at 681-82 (habeas court will not second guess trial counsel's strategic choices). Ellis' testimony was consistent with the expectation given to the court by the prosecutor, and there was no basis on which Becker's counsel could have alleged Ellis' testimony was false. See Strickland, 466 U.S. at 694. Thus, trial counsel made reasonable strategic choices in not pursuing a potentially prejudicial area impeaching Ellis or a frivolous objection to Ellis' testimony. See Williams, 529 U.S. at 407. Further, Becker fails to prove, that but for his lawyer's errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694. Accordingly, this claim lacks merit.

3.      Becker's Counsel Ineffectiveness for Failure to Fully Develop an Entrapment Defense is Meritless.

Becker claims trial counsel ineffectiveness for failure to fully develop an entrapment defense. See Habeas Petition at 7. To justify an entrapment instruction, a defendant must present evidence of: (1) government inducement of the crime; and (2) a lack of predisposition on the part of the defendant to engage in criminal conduct. United States v. Wright, 921 F.2d 42, 44 (3d Cir. 1990) (citing United States v. Fedroff, 874 F.2d 178, 182 (3d Cir. 1989)). Becker argues he brought up specific sexual acts during his conversation with the purported male minor only

after he was badgered with questions about his sexual desires by law enforcement officers.  <u>See</u>

Super. Ct. Brief at 61.  Becker claims he was initially solicited by law enforcement personnel and

before this solicitation he lacked the intent to commit the alleged crimes.  <u>Id</u>.  Additionally,

Becker claims law enforcement officers induced him to arrive at the agreed upon meeting place

by initiating contact with him after he failed to show at the time initially agreed upon by Becker

and police posing as a minor.  <u>See</u> Super. Ct. Brief at 61-62.

      The PCRA Court held defense counsel was not ineffective because defense counsel's

"cross examination could have backfired by offering the prosecution witness a chance to

downplay their involvement at the expense of emphasizing Defendant's actions."  <u>See</u> PCRA

Opinion at 9-10.   The PCRA court also noted the trial court charged the jury with instructions

for the entrapment defense.  <u>See</u> PCRA Opinion at 9-10.  The PCRA court concluded, even if his

counsel was deficient, Becker failed to show the prejudice necessary to make out a claim of

counsel ineffectiveness.  <u>Id</u>. at 10.

      The Superior Court affirmed, finding Becker failed to identify which of trial counsel's

acts or omissions were defective.  <u>See</u> PCRA Super. Ct. Opinion at 15.  The Superior Court

noted Becker had the opportunity to prove his lack of intent to commit the alleged crimes when

he testified, but the jury found his claims lacked credibility.  <u>Id</u>.  The Superior Court also noted

the jury charge included instructions for an entrapment defense.  <u>Id</u>.

      The state courts' finding the claim meritless was not contrary to, nor an unreasonable

application of, <u>Strickland</u>.  <u>See</u> § 2254(d)(1); <u>Williams</u>, 529 U.S. at 404-09.  It was not

objectively unreasonable to reject Becker's ineffectiveness claim because Becker fails to argue

what specifically his counsel should have done differently to enhance his entrapment defense.

See Strickland, 466 U.S. at 680; see also Williams, 529 U.S. at 407. Even if Becker had argued a specific deficiency in his counsel's strategy in proving an entrapment defense, I cannot second guess trial counsel's strategic decisions. See Rolan, 445 F.3d at 681-82. Further, Becker failed to establish the outcome of the proceeding would have been different because he was given an opportunity to convince the jury he lacked the requisite intent when he testified in his own defense, and his attorney had the court deliver a jury instruction on an entrapment defense. Strickland, 466 U.S. at 694. Thus, the claim lacks merit.

4.    Becker's Claim of Trial Counsel Ineffectiveness for Failure to Object to the Prosecutor's Misconduct During Closing Argument Lacks Merit.

Becker claims his trial counsel was ineffective for failure to object during the prosecutor's closing argument, when the prosecutor impermissibly vouched for a Commonwealth witness and made use of an impermissible analogy. See Habeas Petition at 6. Both claims lack merit.

As discussed above, the underlying claims of prosecutorial misconduct due to impermissible vouching and impermissible use of an analogy during closing argument are without merit. See supra Sections II.A.2.a. and II.A.2.b. Therefore, it was not objectively unreasonable for the state courts to find counsel was not ineffective for failure to raise meritless claims. See Parrish v. Fulcomer, 150 F.3d 326, 328-29 (3d Cir. 1998) (counsel's failure to raise a claim is not unreasonable if the underlying claim is meritless); Holland v. Horn, 150 F. Supp. 2d 706, 731 (E.D. Pa. 2001) (VanAntwerpen, J.).

C.    Sufficiency of the Evidence

When reviewing a constitutional challenge on sufficiency of the evidence, a federal

court's role is limited. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The inquiry is not whether the trier of fact made the correct determination, but whether it made a rational determination, thus precluding a federal habeas court from making a subjective decision on the petitioner's guilt or innocence. Herrera v. Collins, 506 U.S. 390, 402 (1993) (citing Jackson, 443 U.S. at 320 n.13).

The sufficiency of the evidence inquiry is limited to record evidence and does not include newly discovered evidence. Herrera, 506 U.S. at 402. The trier of fact – not the federal habeas court – is responsible for fairly resolving conflicting testimony, weighing the evidence, and drawing reasonable inferences from the facts. House, 547 U.S. at 538-539 (contrasting the sufficiency review under Jackson with the "gateway" actual innocence standard under Schlup); Herrera, 506 U.S. at 401-02 (quoting Jackson, 443 U.S. at 318-19). "It is well settled that upon habeas corpus the court will not weigh the evidence." Hyde v. Shine, 199 U.S. 62, 84 (1905). "Federal courts are not forums in which to re-litigate state trials." Barefoot v. Estelle, 463 U.S. 880, 887 (1983).

Becker is entitled to relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324; see Orban v. Vaughn, 123 F.3d 727, 731-33 (3d Cir. 1997) (applying Jackson standard to sufficiency of the evidence claim). Federal review of a sufficiency of the evidence claim under Jackson must be based on state law, that is, the substantive elements of the crime must be defined by applicable state law. Jackson, 443 U.S. at 324 n.16.

In Pennsylvania, when reviewing a sufficiency of the evidence claim, an appellate court must view all the evidence in the light most favorable to the Commonwealth, and determine if the evidence was sufficient to enable a fact finder to conclude that all the elements of the charged offenses were established beyond a reasonable doubt.  See Commonwealth v. McClendon, 874 A.2d 1223, 1228-29 (Pa. Super. Ct. 2005); accord Commonwealth v. Burgos, 610 A.3d 11, 13 (Pa. 1992).

        1.     The Lack of an Actual Victim Has No Effect on Becker's Attempt Convictions

"A person commits an attempt when, with intent to commit a specific rime, he does any act which constitutes a substantial step toward the commission of that crime."  18 Pa. Cons. Stat. § 901(a).  A person commits involuntary deviate sexual intercourse when he "engages in deviate sexual intercourse with a complainant . . . who is less than 16 years of age and the person is four mor more years older than the complainant and the complainant and person are not married to each other."  18 Pa. Cons. Stat. § 3123(a)(7).  A person corrupts the morals of a minor when he is eighteen years of age or older and "by any acts corrupts or tends to corrupt the morals of any minor less than 18 years of age . . . " 18 Pa. Cons. Stat. § 6301(a).

Becker challenges his convictions for criminal attempt to commit involuntary deviate sexual intercourse and criminal attempt to corrupt a minor based on the fact that "the victim was a fictitious child that never existed."  See Brief for Appellant at 8, Commonwealth v. Becker, 3154 EDA 2004 (Pa. Super. Ct. May 3, 2005)[hereinafter Direct Appeal Brief].  In the absence of an actual victim, he maintains the "last and crucial substantial step" required for a conviction of a criminal attempt could not occur.  Id.

The Superior Court held that the absence of an actual victim did not preclude the determination that Becker took a "substantial step" toward the commission of involuntary deviate sexual intercourse. See Direct Appeal Opinion, at 7, 9. The Superior Court noted Becker was charged only with attempt and not actual commission of the underlying crimes and concluded he took a substantial step toward committing involuntary deviate sexual intercourse when he made contact with the officer purporting to be a young boy, offered to engage in various sex acts with him, scheduled a meeting so they could engage in sex acts, and then drove to the agreed upon meeting place. See Direct Appeal Opinion at 9. The Superior Court held Becker took a substantial step toward the corruption of a minor when he engaged in discussions about sex and drugs with an individual purporting to be a thirteen-year-old boy and arranged to meet with the boy for the purpose of engaging in sex and consuming alcohol. Id. at 8.

The Superior Court's decision was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. The court defined the offense according to the Pennsylvania statute and reasonably applied the facts to the elements. Any rational trier of fact could have found Becker's communications with police posing as a minor child, his plans to meet that child, and his arrival at the agreed upon meeting place constituted a substantial step toward commission of the crimes of involuntary deviate sexual intercourse and corruption of a minor. See Jackson, 443 U.S. at 319. Accordingly, this claim is meritless.

      2.      Becker's Testimony Regarding a Lack of Intent Has No Effect on His Attempt Convictions

Becker argues his attempt convictions fails because he testified at trial that he lacked the intent to commit the crimes. See Direct Appeal Brief at 11. The Superior Court rejected

31

Becker's argument.  See Direct Appeal Opinion at 8.  In reaching its decision, the court

recognized that the jury must resolve conflicts in testimony, assess credibility, and weigh

evidence, and that Becker's jury did not believe his version of events.  Id. (citing Commonwealth

v. Payne, 868 A.2d 1257, 1260 (Pa. Super. Ct. 2005).  The court held a rational fact-finder could

conclude Becker demonstrated an intent to commit the crime of involuntary sexual intercourse

because of the overwhelming evidence: Becker knew the purported boy was thirteen-years old;

Becker knew he was more than four years older than the boy; Becker engaged in discussions with

the purported boy about sex and drugs; and Becker arranged for a meeting with the boy.  Id. at 7-

8.  The court concluded that the evidence was sufficient to establish Becker had the necessary

intent to support a conviction of criminal attempt to corrupt a minor.   Id. at 8.

The Superior Court's decision was not contrary to, nor an unreasonable application of,

clearly established Supreme Court precedent.  The court defined the attempt crimes in

accordance with the Pennsylvania statute and reasonably applied the facts.  Any rational trier of

fact could have found that Becker's actions showed he had an intent to commit the crimes of

involuntary sexual intercourse and corruption of a minor.  Therefore, Becker's claims are without

merit.

>    3.    There is Sufficient Evidence to Sustain Becker's Conviction for Criminal
>          Use of a Communication Facility

It is a third-degree felony for a person to use "a communication facility to commit, cause

or facilitate the commission or attempt thereof of any crime which constitutes a felony under this

title . . ." 18 Pa. Cons. Stat. § 7512(a).  A communication facility is "a public or private

instrumentality used or useful in the transmission of signs, signals, writings, images, sounds, data

or intelligence of any nature transmitted in whole or in part, including but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail." 18 Pa. Cons. Stat. § 7512(c).  The Superior Court held there was sufficient evidence to support Becker's conviction of criminal use of a communication facility because Becker used a computer to transmit writings aimed at procuring sex from a minor, leading to his conviction of criminal attempt to commit involuntary deviate sexual intercourse, which is a felony under Pennsylvania's Crimes Code.  See Direct Appeal Brief at 10.

Becker's claim of insufficient evidence to support his conviction is without merit.  The Superior Court's decision was not contrary to, nor an unreasonable application of, clearly established Supreme Court law.   The court defined the crime in accordance with the Pennsylvania statute and reasonably applied the facts to the elements.  A rational fact finder could have found all the elements of the crime were met:  Becker used a computer to send written statements to a minor in order to solicit sex which led to his conviction for a separate felony offense.  Therefore, this claim is meritless.

Accordingly, I make the following recommendation:

## **RECOMMENDATION**

AND NOW, this 23rd day of April, 2010, it is respectfully recommended that the petition for a writ of habeas corpus be DENIED.  It is further recommended that there is a no probable cause to issue a certificate of appealability.  The petitioner may file objections to the Report and Recommendation within fourteen days after being served with a copy thereof.  <u>See</u> Fed. R. Civ. P. 72.  Failure to file timely objections may constitute a waiver of any appellate rights.  <u>See</u> <u>Leyva v. Williams</u>, 504 F.3d 357, 364 (3d Cir. 2007).


BY THE COURT:


\s\ TIMOTHY R. RICE
TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE